## HUNT *v.* METCALF *et al.*

*(District Court, S. D. California. June 29, 1891.)*

1. **SHIPPING—CHARTER-PARTY—CONSTRUCTION—TIME.**
    A charter-party for the period of six months contained the clause: "Vessel, if kept over the charter time, the same rate as the charter, with the privilege of six months over the charter if wanted." *Held*, that the charterers had the right to keep the vessel for such time as they wished, not exceeding six months additional in all, at the charter price.
2. **SAME—PLACE OF DELIVERY—TENDER.**
    Where the charterer is to deliver the vessel to the owner at the home port or another, at the latter's option, tender of her at either port is sufficient to relieve the charterers of further liability, where the owner fails to exercise the option.

In Admiralty.
*David L. Withington,* for libelant.
*Brosseau, Hatch & Thomas,* for respondents.

Ross, J. The case shows that the respondents, who are residents and merchants of Santa Barbara, were desirous of chartering a vessel to en-

gage in hunting otter; and learning that the libelant was the owner of the schooner Ethel, which is a registered vessel of 31 tons burden, and whose home port is San Diego, where the libelant resides, arranged with him to take the schooner to Santa Barbara, that the parties might enter into a charter-party,—respondents agreeing to pay libelant the costs incurred in taking the vessel to that port. Accordingly, the Ethel was taken to Santa Barbara by the libelant, and there, on the 8th day of April, 1889, he and the respondents entered into the charter-party which forms the basis of this suit. Three hundred dollars were thereupon paid to libelant by the respondents upon the charter, and respondents also paid to him the costs of taking the schooner from San Diego to Santa Barbara. Stores for the hunting trip were thereupon put on board, and the respondents' hunters and boat-pullers went on board, and libelant paid off his men. When it was sought to make a change of masters at Santa Barbara, it was found that the custom-house officer there did not have the necessary blanks, and, at the request of respondents, libelant took the schooner, with her crew, to San Pedro, and there, at the request of one Olivas, who was representing respondents, David W. Dean was made master. At San Pedro, and before Dean was made master, the libelant ran the schooner aground, and it is urged for the respondents that she was thereby badly damaged. I do not think the evidence so shows. From San Pedro the vessel sailed to the neighboring islands, under the command of Capt. Dean, and worked up the coast, encountering weather of such severity that but little hunting could be done until after the 11th of May; after which time the weather improved, and the hunting became good. June 12th the schooner returned to Santa Barbara because of a want of provisions and ammunition, not because she was in a dangerous condition, as is now contended by the respondents. She lay there until June 19th. The schooner Queen of the Bay, Capt. Chase commanding, was also at Santa Barbara at this time, and with her master the respondents were negotiating, with the view to securing that schooner for their hunting expedition. On the 19th of June respondent Rogers told Capt. Dean that the Ethel was leaking so badly that he wanted him to take her back to libelant at San Diego. Nevertheless he first sent him to the island of San Miguel with some passengers, consisting of men, women, and children. It cannot be believed that, if respondents really considered the schooner unseaworthy, as it is now contended in their behalf they did, that they would have sent her on a trip with men, women, and children, some of whom, at least, were their friends, as passengers. The schooner returned to Santa Barbara from that trip, and on the 26th of July respondents dispatched her, in charge of Capt. Dean, to San Diego, to be delivered to libelant because of her alleged dangerous condition. She arrived there July 20th, where she remained in charge of Capt. Dean until August 20th, at which time she returned to Santa Barbara; and on August 26th was sent by respondents on another hunting trip, under command of Capt. Olivas. The libelant refused to receive the schooner when tendered by Capt. Dean, claiming that she was staunch and tight. While she lay at San Diego, to-wit, August 9th, Capt. Dillingham, agent

and surveyor of the underwriters of San Francisco, made a thorough survey of her, and she was also painted by Dean, and a little place about eight inches square under her bow, where she had been pinched by the anchor, was repaired by libelant at Capt. Dean's request. The testimony of the surveyor is to the effect that he found the vessel well built and sound; that her sails and running gear were in good order, her outside planking well corked and painted, and that she had no appearance of having leaked or strained; that the vessel showed good usage, and appeared to be as good as any vessel of her class. The testimony of the witness Chase, master of the schooner Queen of the Bay, also tends strongly to negative the claim that the Ethel was in a leaky and dangerous condition. While she was at Santa Barbara, from July 12th to July 19th, the respondent Rogers having told him that the vessel was leaking so badly that he could not do anything with her, Chase went on board to see if that was so. The testimony of the witness is to the effect that he did not find the Ethel leaking, and that there were no indications of her having leaked; that he has sailed in her in heavy weather, and considers her "as solid a little vessel as there is on the coast." There is also evidence of the schooner in question having made voyages, without leaking, under trying circumstances, immediately before the making of the charter-party, and shortly after its expiration,—in one instance, at least, with a cargo of gold ore nearly double the ordinary carrying capacity of the vessel, and that, too, during rough weather. Moreover, the condition of the pump put in evidence is very strong evidence tending to negative the testimony on the part of the respondents in relation to the amount of pumping done on the vessel. Although the evidence is in many respects very conflicting, I am satisfied, from a careful examination of the whole of it, that the claim that the Ethel was not seaworthy is not well founded.

The charter-party was for the term of six months, at the monthly rent of $100, $300 in advance, balance monthly in advance. It also contained this clause: "Vessel, if kept over the charter time, the same rate as the charter, with the privilege of six months over the charter if wanted." As to the proper construction to be put upon this clause, the parties are not agreed. Such instruments should have a liberal construction, in furtherance of the intention of the parties. *Raymond* v. *Tyson,* 17 How. 53. I think it clear, from the language used, that the intention of the parties was that respondents should have the right to keep the vessel for such time as they wished over the six months, paying therefor at the rate of $100 per month, not exceeding six months additional in all. In November the respondents sent the schooner back to San Diego in charge of Capt. Olivas, to be returned to the libelant; and on the 4th of that month there was, I think, a sufficient tender of the vessel to the libelant. Under my construction of the charter-party, the respondents then had the right to return the vessel, which was to be done at the home port or at Santa Barbara, at the option of the owner. It was tendered to the owner at the home port. If he wanted it returned at Santa Barbara, he should have exercised his option. Not having

done so, it was his duty to have accepted the vessel. For no time after November 4, 1889, do I think respondents properly chargeable for the use of the vessel. But they should be held liable, at the stipulated rate, for its use-from the execution of the charter-party, to and including November 4th; that is to say, 6 months and 28 days, less the advance payment of $300, made by respondents, April 8th. The libelant is also entitled, I think, to $9 for the hatchet and money advanced by him to respondents' crew at San Pedro; to $32 for board and provisions furnished the captain and crew of the Ethel while at San Diego in July and August, 1889; to $58.70 for the anchors and chain not returned; to $5 for damage to the vessel; to $21 for damage to the sails; and to $10 for damage to the cross-trees. For cleaning the bottom of the vessel, and for painting her, I do not think respondents properly chargeable. I should be disposed to allow the item of $105, claimed by respondents for rope for the vessel paid for by them at the request of libelant, but for the fact that the evidence shows it was not returned. The other items claimed by respondents must be denied, under the views already expressed. There will be a decree for the libelant in accordance with this opinion, with legal interest at 7 per cent. per annum from the dates the respective payments were due, and for costs.